IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IVY SKIDMORE, | * | |
| *Plaintiff,* | * | |
| v. | * | |
| CACI, INC. - FEDERAL, | * | Civil Action No.:  8:24-cv-02736-PJM |
| *Defendant.* | * | |

**PLAINTIFF'S REPLY TO DEFENDANT
CACI, INC. - FEDERAL'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND COMPLAINT**

Ivy Skidmore, Plaintiff, by John B. Stolarz, her attorney, files this Reply to Defendant CACI, Inc. - Federal's Opposition to Plaintiff's Motion for Leave to Amend Complaint, and states:

**I.   Introduction.**

Defendant has filed a motion opposing Plaintiff's request to amend her complaint.  Defendant states that Plaintiff cannot assert a viable claim for hostile work environment nor can she assert any facts sufficient to correct the timeliness in her initial complaint. Def. Memo. at 2.

This memorandum will demonstrate that Plaintiff sets forth a viable hostile work environment claim.

Plaintiff's original response in opposition to Defendant's motion to dismiss is sufficient to establish that the 300 window for filing a Charge of Discrimination began on October 29, 2021 when Plaintiff was actually terminated.

Lastly, so that it is not overlooked, Plaintiff explains that she has stated a viable claim for retaliation in response to her request for an accommodation for her disability.

**II.   Plaintiff Sets for an Actionable Claim of a Hostile Work Environment.**

Plaintiff's facts meet the threshold for an objectively hostile work environment for three

1

reasons: (1) Her claims fit squarely within the continuing violation doctrine as recognized for hostile work environment claims, (2) Her allegations describe a cumulative pattern of hostility that aligns with the totality-of-circumstances standard, and (3) Defendant's arguments misapply the severe and pervasive standard by ignoring the pervasiveness of its conduct and mischaracterizes Plaintiff's allegations as vague.

In *Sheron Thornton v. Department of Public Safety and Correctional Services*, Civil Action No. ELH-16-3028, (August 18, 2017), Judge Ellen Lipton Hollander set forth the elements of a hostile work environment:

> [U]nlike discrete acts, hostile work environment claims occur "over a series of days or perhaps years . . . . *[Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); And, the Court said that, with respect to hostile work environment claims, "a single act of harassment may not be actionable on its own." *Id.* Thus, for hostile work environment claims, the Supreme Court concluded, *id. at 117:* "It does not matter, for purposes of [Title VII], that some of the component acts of the hostile work environment fall outside the statutory time period." The Court continued, id.: "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."

*Thornton v. Department of Public Safety and Correctional Services*, at * 21.

Defendant's assertion that the continuing doctrine does not apply to failure to accommodate claims is wrong. Its reliance on *Hill v. Hampstead Lester Morton Court Partners LP*, 581 F. Appx. 178, 181 (4th Cir. 2014), to support its position misreads the court's opinion. What the Hill case states is that the continuing violation doctrine does not apply to the facts of that case. In *Rouse, Jr., v. Chicago Transit Authority*, Case No. 13-cv-5260, *23 N.D. Ill (Sept. 21, 2016) the court analyzed the applicability of the continuing violation doctrine to extend the statute of limitations in discrimination cases under the Rehabilitation Act and found that allegations of express discriminatory policy could suffice to apply this doctrine. See also, *Kraus v. Shinseki,* 846 F. Supp. 2d 936 (N.D. Ill. 2012); *Sutton v. Potter*, 2004 WL 603477 (N.D. Ill. Mar. 22, 2004).

To survive summary judgment on her hostile work environment claim, Plaintiff must show that she "is a member of the class of people protected by the statute, that she was subject to unwelcome harassment, that the harassment resulted from [her] membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of his employment." *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003). "A hostile work environment is a cumulative phenomenon, composed of 'a series of separate acts that collectively

constitute one 'unlawful employment practice.' While a single harassing act might not be actionable standing alone, it can be actionable as a constituent element of a larger hostile environment claim." *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1124 (8th Cir. 2007) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061 (2002)).

In determining whether an actionable hostile work environment claim exists, the court looks to "all the circumstances," and "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan* , 536 U.S. 101, 116–17, 122 S.Ct. 2061 (2002). In other words, even if most of the harassing conduct on which a plaintiff relies to establish her hostile work environment claim occurred outside the statutory period, the claim will be considered timely if at least one act continuing the violation occurred within the statutory period.

In evaluating a hostile work environment claim, courts look to the totality of the circumstances, "including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016). To satisfy the severe and pervasive element, harassment must be both subjectively and objectively offensive and a plaintiff "must prove the conduct was 'extreme in nature and not merely rude or unpleasant.'" *Sutherland v. Missouri Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009).

In paragraph 14 of the original complaint, and in paragraph 22 of the Amended Complaint, Plaintiff sets out Defendant's adverse actions toward the Plaintiff after she requested an accommodation for her disability:

> "Following her return to full-duty work in August 2021, the behavior of her supervisors, especially that of Darrel Taylor, the Plaintiff's immediate supervisor, markedly changed since she requested her disability accommodation. Plaintiff's work was over-scrutinized by Mr. Taylor and James Philliposian, a designated team lead at CACI for Interagency Agreements. Mr. Taylor and Mr. Philliposian repeatedly berated the Plaintiff over minor matters in front of co-workers. The malicious conduct toward the Plaintiff included raising their voice when addressing her in front of colleagues for seemingly minor or even outright fabricated flaws in her work and harsh verbal criticism. Mr. Philliposian refused to speak to Plaintiff via interoffice chat. Many days, Plaintiff was required to work 12 or more hours to keep up with her assigned workload, which constituted overtime, which she was not permitted to report or claim compensation."

As set forth in paragraph 23 of the Amended Complaint, the undue harassment of the

3

Plaintiff, as set forth in the above paragraph started after her return to work and continued until her termination on October 29, 2021.

Defendant's supervisor's conduct in overscrutnizing Plaintiff's work, raising their voice and berating the Plaintiff over minor matters in front of colleagues, harshly criticizing her in front of co-workers, refusal to speak with her and assigning more work than she could perform in 8 hours which required her to work up to 12 hours a day, without allowing her overtime wages, constitutes a subjective and objective hostile work environment.

The termination was a part of the ongoing harassment and, even though a discrete act, should be considered a part of the hostile work environment claim.

### III. Plaintiff's Newly Pleaded Facts Directly Relate to Her Claims' Timeliness and Viability.

Defendant argues that Plaintiff's newly alleged facts do not cure its assertion that her other claims remain untimely. Def. Memo. at 21. While Defendant does not appear to take issue with Plaintiff's initial disability discrimination claim, Plaintiff's Amended Complaint incorporates newly pleaded facts that directly address Defendant's procedural and substantive challenges to her retaliatory discharge and failure to accommodate claims. Pl. Amend. Compl., ¶¶ 30-33 Specifically, Plaintiff's additions clarify the timeline and emphasize Defendant's failure to engage in the ADA-required interactive process, demonstrating how its actions contributed to Plaintiff's adverse outcomes.

#### A. Defendant Failure to Abide by its Obligation to Engage Plaintiff in an Interactive Process Demonstrate Bad Faith on the part of the Defendant.

Defendant ignore the legal obligations imposed by the ADA's[1] interactive process requirement after Plaintiff requested an accommodation for her disability. Although, the ADA instructs that employers engage in good faith to identify and implement reasonable accommodations for employees with disabilities,[2] Defendant effectively shifted its obligation to provide a reasonable

---

[1] Americans with Disabilities Act of 1990, (ADA) as codified, 42 U.S.C. §§ 12112, *et seq*.

[2] See 29 C.F.R. § 1630.2(o)(3). (Asserting that it may be necessary to initiate an informal interactive process with people with disabilities-to identify "precise limitations resulting from the disability and reasonable accommodations that could overcome

4

accommodation onto Plaintiff by requiring her to secure a new position without actively assisting her. This arguably violates the ADA's aspirational good-faith process directive that employers engage disabled employees to identify reasonable accommodations, which may include reassignment.[3]

The parties' engagement in an interactive process is not a mere procedural formality but an integral component of determining reasonable accommodations under the ADA. As the Fourth Circuit suggests in *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337 (4th Cir. 2013), an employer's failure to engage in an interactive process may constitute evidence of failing to accommodate if an employee put the employer on notice of the need for an accommodation. Plaintiff's Amended Complaint highlights how Defendant did not communicate effectively, ignored her requests for assistance, and created a pressured, hostile environment, making her termination inevitable.

This aligns with the Fourth Circuit's recognition that "The continuing-violation doctrine applies to claims based upon a Defendant's ongoing policy or pattern of discrimination rather than discrete acts of discrimination." *Hill v. Hampstead Lester Morton Court Partners LP,* No. 13-1569, 8 (4th Cir. Aug. 5, 2014). (Unpublished.)   In other words, an ongoing, cumulative failure to accommodate a claim may give rise to continuing violations and falls squarely within the *Morgan* framework. As such, Plaintiff's ADA claim remains timely and actionable.

However, even if Defendant had engaged in an interactive process to assist Plaintiff's redeployment, a glaring equity question remains:

> Does the law allow Defendant to impose conditions on Plaintiff's continued employment that they knew (or should have known) were unlikely to succeed without active support?

Probably not. This situation creates a concerning power disparity, burdening Plaintiff with avoiding termination while circumventing and insulating Defendant from responsibility. It could be akin to "constructive termination," where an employer (Defendant) creates a situation designed to make the employee (Plaintiff) fail. As a result, Defendant could proactively absolve itself of direct responsibility for the adverse action. Such a tactic undermines the ADA's intent by pressuring her into navigating a hostile work environment without a reasonable accommodation.

---

[Plaintiff's] limitations.")

[3] See 29 C.F.R. § 1630.2(o)(2)(ii).

5

**IV. Plaintiff Clearly Sets Forth a Claim for Retaliation.**

What Defendant did not dispute with any significant argument in any of its briefs is the validity of Plaintiff's claim for retaliation. What Judge Ellen Lipton Hollander stated in *Athryn E. Reedjospeph-Minkins v. DC Government Dept of Youth Rehabilitation Services et al.*, Civil Action No. ELH-17-45 (D.Md. June 20, 2018), is applicable here:

> "The Supreme Court has explained that the definition of "adverse employment action" in the context of a claim for retaliation is not limited to the definition as used in the context of a substantive discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 64 (2006) ("BNSF"). Rather, "the adverse action component of... The antiretaliation provision can be satisfied by showing that the employer took 'materially adverse' action in response to an employee engaging in a protected activity, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Williams v. Prince William Cnty., Va.*, 645 F. App'x 243, 245 (4th Cir. 2016) (quoting *BNSF*, 548 U.S. at 68). Conduct as seemingly "trivial" as a "change in an employee's work schedule" or a "supervisor's refusal to invite an employee to lunch" may, under some circumstances, constitute adverse employment actions in the context of retaliation. *BNSF,* 548 U.S. at 69."

*Athryn E. Reedjospeph-Minkins v. DC Government,* at *12-13.

As stated in paragraph 14 of the original complaint, and in paragraph 22 of the Amended Complaint, Plaintiff sets out sufficient facts that, when viewed in the light most favorable to her, support her claim for discriminatory retaliation:[4]

> "Following her return to full-duty work in August 2021, the behavior of her supervisors, especially that of Darrel Taylor, the Plaintiff's immediate supervisor, markedly changed since she requested her disability accommodation. Plaintiff's work was over-scrutinized by Mr. Taylor and James Philliposian, a designated team lead at CACI for Interagency Agreements. Mr. Taylor and Mr. Philliposian repeatedly berated the Plaintiff over minor matters in front of co-workers. The malicious conduct toward the Plaintiff included raising their voice when addressing her in front of colleagues for seemingly minor or even outright fabricated flaws in her work and harsh verbal criticism. Mr. Philliposian refused to speak to Plaintiff via interoffice chat. Many days, Plaintiff was required to work 12 or more hours to keep up with her assigned workload, which constituted overtime, which she was not permitted to report or claim compensation."

As set forth in paragraph 23 of the Amended Complaint, the undue harassment of the Plaintiff, as set forth in the above paragraph started after her return to work and continued until her termination on October 29, 2021.

---

[4] Although the following is quoted above in Section II, the importance of Plaintiff's allegations bears repeating.

## V.  Conclusion.

Under Fed. R. Civ. P. 15(a)(2), a court should freely grant leave to amend a complaint when the interests of justice demand it-especially in the absence of prejudice, bad faith, and futility. Plaintiff's Amended Complaint clarifies the allegations and strengthens her claims while ensuring a full and fair adjudication on the merits. Plaintiff's motion to amend her complaint are made in good faith and, since the case is just beginning, is not prejudicial to the Defendant.[5]

The foregoing demonstrates that the Plaintiff has set forth a viable claim for a hostile work environment and retaliation.    Plaintiff's Response in Opposition to Defendant's Motion to Dismiss provides adequate support for the timeliness of Plaintiff's Charge of Discrimination.

What should not be overlooked is the bad faith demonstrated by the Defendant when it failed to engage the Plaintiff in an interactive process required by law.

Wherefore, Plaintiff requests that the Court deny Defendant, Inc. - Federal's Opposition to Plaintiff's Motion for Leave to Amend Complaint, deny Defendant's Motion to Dismiss, and grant Plaintiff's Motion for Leave to Amend Complaint, and for such other and further relief as may be appropriate under the circumstances.

_____/s/_____
John B. Stolarz
USDC No.: 01929
The Stolarz Law Firm
6509 York Road
Baltimore, MD 21212
(410) 532-7200
(410) 372-0529 (fax)
stolarz@verizon.net

Attorney for Plaintiff.

---

[5][A]n amendment is prejudicial [when] determined by [its] nature [and] timing. A [typical] [] prejudicial amendment [] "raises a new legal theory that [] require[s] the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." [quoting *Johnson v. Oroweat Foods Co.*]  An amendment is not prejudicial, by contrast, if it merely adds [another] theory of recovery to the facts already pled and is offered before any discovery has occurred. *Laber v. Harvey,* 438 F.3d 404, 427 (4th Cir. 2006) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503 (4th Cir. 1986).

7

**CERTIFICATE OF SERVICE**

       I hereby certify that on this January 12, 2025 a copy of the foregoing document was served through CM/ECF, the US District Court's electronic filing system on:

Louis L. Chodoff, Esquire
Ballard Spahr LLP
700 East Gate Drive
Suite 330
Mount Laurel, NJ 08054

Attorney for Defendant

                                                      _____/s/_____
                                                         John B. Stolarz

                                                         Attorney for Plaintiff

W:\5484\Motion to Amend- Reply to Opposition\Plaintiff's Reply to Opposition to Plaintiff's  Leave to Amend.wpd