IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IVY SKIDMORE, | * | |
| *Plaintiff,* | * | |
| v. | * | |
| CACI, INC. - FEDERAL, | * | Case No.:  8:24-cv-02736-PJM |
| *Defendant.* | * | |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Ivy Skidmore, Plaintiff, by and through John B. Stolarz, sues CACI, Inc. - Federal, Defendant, and states:

1. The Plaintiff is a resident of Anne Arundel County, Maryland.

2. Defendant CACI, Inc. - Federal (CACI), incorporated in the Commonwealth of Virginia, does business in Prince Georges County, Maryland.

3. Defendant CACI hired Ivy Skidmore as a Senior Acquisition Analyst on or around November 15, 2017. During her work for Defendant, Plaintiff attained the position of Acquisition Analyst P1 (herein Jr. Procurement Analyst). The Plaintiff was assigned to work on Defendant's contract with the National Archives and Records Administration (NARA).

4. At all relevant times, the Plaintiff performed her work satisfactorily. Since becoming employed by CACI in December 2017, the Plaintiff received numerous positive performance evaluations and raises and had excellent working relationships with CACI and NARA personnel.

5. For example, in October 2020, shortly after the end of the government's fiscal year 2020, the Plaintiff received effusive written praise for her annual work from Ms. Laverne Fields, Chief Acquisition Officer at NARA. Before disclosing her disability, Plaintiff received verbal praise regularly from her supervisor (and Program Manager), Darrell Taylor,

1

who also relayed positive feedback from NARA contracting officers with whom Plaintiff worked. As recently as June 2021, Ms. Fields relayed positive feedback about the Plaintiff after a meeting between Ms. Fields and two of Mr. Taylor's supervisors.

6. The Plaintiff began experiencing knee pain in April 2021 and sought medical treatment shortly after, where she was diagnosed with osteoarthritis of the knees. In May 2021, the Plaintiff started attending physical therapy twice weekly in the evening after work. The Plaintiff telephonically informed her supervisor, Darell Taylor, of her ongoing physical therapy.

7. However, Plaintiff's disability interfered minimally with her ability to perform the majority of her assigned duties.

8. The Plaintiff's condition worsened between May and July. On July 15, 2021, she notified her supervisor by phone that she was experiencing severe nerve pain and would see her primary care practitioner, Katherine Grote, CRNP, that evening. Her practitioner immediately began treating her for neuropathy, giving her a prescription for Gabapentin.

9. In response to Plaintiff's condition and the medication's side effects, her practitioner advised her to take off work from July 16 to July 21, 2021. Her practitioner provided her with a note reflecting her advisement.

10. On July 16, 2021, the Plaintiff electronically emailed her supervisor a copy of the note and provided an expanded account of her July 15, 2021, visit with her practitioner. She also spoke telephonically with him, clearly articulating her medical condition, which included ongoing nerve pain, anxiety, and osteoarthritis of the knees. The Defendant did not request any further documentation.

11. On July 18, 2021, Plaintiff sent a text message to James Philliposian, her interagency agreement (IAA) team lead, advising him of her ongoing knee pain, muscle weakness, and nerve pain that began in April 2021.

12. On or about July 21, 2021, as part of several accommodations, Plaintiff's practitioner recommended a temporary modified work schedule of 16 hours per week beginning July 26, 2021. Her practitioner found this medically necessary while Plaintiff adjusted to an incrementally increasing dose of Gabapentin and to mitigate exacerbations of

her symptoms. The Plaintiff received another practitioner's note reflecting her recommendation.

13. On or about July 21, 2021, Plaintiff phoned her supervisor-to follow up after her second appointment with Katherine Grote. On the call, Plaintiff informed her supervisor of the contents of the practitioner's letter, and as requested, she electronically submitted a copy of the July 21 note.

14. Defendant never requested any additional medical documentation from Plaintiff to document her ongoing disabilities.

15. On or about July 21, 2021, Plaintiff consulted Joann Burn, her contact in the Defendant's Human Resources Department, explaining that she could not work full-time for a few weeks. The Plaintiff also informed Ms. Burn of her ongoing neuropathy.

16. Ms. Burn advised Plaintiff that she could request to work a modified schedule of 16 hours per week and request short-term disability (STD) leave. Ms. Burn further advised the Plaintiff that this approach would enable her to earn 100% of her pay while on short-term disability.

17. On July 30, 2021, Plaintiff filed a claim for STD retroactive to July 23, 2021, because the first five working days, per policy, between July 16 and July 22, 2021, were ineligible. While her claim was pending, Plaintiff used paid time off and leave without pay.

18. Defendant never granted Plaintiff the reasonable accommodation of a modified schedule. On or about August 4, 2021, the Plaintiff's supervisor called and advised her that she could not work a temporary modified work schedule of 16 hours per week.

19. Instead of the reasonable accommodation request, NARA Contracting Officers-Lisa Miller and Santo Plater-derisively accused her of "wanting to work part-time." Of course, Plaintiff did not want to work part-time but needed the temporary accommodation of short-term leave for her neuropathy.

20. In addition to Defendant's refusal to provide the requested accommodation, Plaintiff's workload, instead, was subsequently increased.

21. Having experienced a modest improvement in symptoms and her insurance approval of Orthovisc Gel Shots on August 9, 2021, the Plaintiff's practitioner medically

3

cleared her to return to full-time work on August 12, 2021.

22. Following her return to full-duty work in August 2021, the behavior of her supervisors, especially that of Darrel Taylor, the Plaintiff's immediate supervisor, markedly changed since she requested her disability accommodation. Plaintiff's work was over-scrutinized by Mr. Taylor and James Philliposian, a designated team lead at CACI for Interagency Agreements. Mr. Taylor and Mr. Philliposian repeatedly berated the Plaintiff over minor matters in front of co-workers. The malicious conduct toward the Plaintiff included raising their voice when addressing her in front of colleagues for seemingly minor or even outright fabricated flaws in her work and harsh verbal criticism. Mr. Philliposian refused to speak to Plaintiff via interoffice chat. Many days, Plaintiff was required to work 12 or more hours to keep up with her assigned workload, which constituted overtime, which she was not permitted to report or claim compensation.

23. Due to the increased workload, excessive overtime work, malicious berating conduct of her supervisors and team lead, and fearing the loss of her job, Plaintiff experienced a worsening of her anxiety disability, creating severe and substantial emotional distress and anguish. The harassment continued until October 29, 2021.

24. On October 4, 2021, Plaintiff received a letter advising that she would be laid off from the NARA project, if she did not find an alternate position with Defendant by October 29, 2021. The letter stated:

> "It is with deep regret that I must inform you that at the request of our customer, you are being removed from your position supporting the National Archives Records Administration effective October 29, 2021, which will be your last day worked. You are being provided with 12 days notification in accordance with CACI's Notification for Termination without Cause policy. **Should another CACI position for which you qualify and are accepted not be identified, you will be involuntarily separated effective October 29, 2021."** (Emphasis added).

The October 4, 2021 letter further instructed Plaintiff to seek another position with the Defendant:

> "You have been a trusted and valuable employee. The CACI's Redeployment program as a resource to assist employees losing coverage and finding opportunities within the company. Please visit the Redeployment Resources landing page https://caci.sharepoint.us/sites/MYCACIHR/SitePages/Redeployment.aspx to

4

learn more about the program. You can contact redeployment@caci.com with your questions."

25. Plaintiff enrolled in the Defendant's Redeployment Resources program, as directed by the October 4, 2021 letter, but was unable to find another position with the Defendant commensurate with her skills and abilities.

26. No one from the program responded to Plaintiff's requests, or offered any assistance in finding another position with the Defendant.

27. Plaintiff is a qualified individual who can perform the essential functions of her position with, or without an accommodation.

28. On or about August 25, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

29. On April 24, 2024, the EEOC issued a Notice of Right to Sue.

## COUNT ONE
### Disability Discrimination
### Americans with Disabilities Act of 1990

30. The foregoing paragraphs are incorporated herein.

31. The Plaintiff's neuropathy and osteoarthritic conditions are disabilities within the meaning of 42 U.S.C. § 12102(1).

32. The Plaintiff's disabilities limited one or more of her major life activities, within the meaning of 29 CFR § 1630.2(i)(1)(I), such as, but not limited to, working, breathing, walking, standing, sitting, and performing manual tasks.

33. Defendant's actions in over-scrutinizing Plaintiff's work and maliciously harassing her after she requested an accommodation for her disabilities, failing to provide a reasonable accommodation, failing to assist her in finding another position with the Defendant, and terminating her when she was unable to find another position, constitutes intentional discrimination, a violation of the Americans with Disabilities Act of 1990 (ADA) as codified, 42 U.S.C. §§ 12112, *et seq.*

34. As a result of Defendant's unlawful actions, Plaintiff was caused to lose wages

5

and benefits, incur other expenses, and suffer severe emotional distress and mental anguish, including, but not limited to, depression, frustration, insomnia, appetite loss, loss of enjoyment in everyday life, inconvenience, shame, fear, and post-traumatic stress disorder.

Wherefore, the Plaintiff requests:

A. Judgment against Defendant, CACI, Inc. – Federal;

B. Payment of back wages;

C. Payment of front pay;

D. Compensatory Damages in the amount of $300,000.00;

E. Punitive Damages in the amount of $1,000,000.00;

F. Reasonable Attorney Fees and litigation expenses;

G. Reinstatement; and

H. Such other and further relief, as may be appropriate.

## COUNT TWO
### Failure to Accommodate Plaintiff's Disability
### Americans with Disabilities Act of 1990

35. The foregoing paragraphs are incorporated herein.

36. Having full knowledge of Plaintiff's disabilities, Defendant failed to engage Plaintiff in an interactive process, as the law requires, to arrive at a reasonable accommodation.

37. Defendant's failure to provide Plaintiff a reasonable accommodation for her disability constitutes a violation of 42 U.S.C. §§ 12112, *et seq*.

38. As a result of Defendant's unlawful actions, Plaintiff was caused to lose wages and benefits, incur other expenses, incur other expenses, and suffer severe emotional distress and mental anguish, including, but not limited to, depression, frustration, insomnia, appetite loss, loss of enjoyment in everyday life, inconvenience, shame, fear, and post-traumatic stress disorder.

Wherefore, the Plaintiff requests:

A. Judgment against Defendant, CACI, Inc. – Federal;

B. Payment of back wages;

C. Payment of front pay;

D. Compensatory Damages in the amount of $300,000.00;

E. Punitive Damages in the amount of $1,000,000.00;

F. Reasonable Attorney Fees and litigation expenses;

G. Reinstatement; and

H. Such other and further relief, as may be appropriate.

## COUNT THREE
### Retaliation
### Americans with Disabilities Act of 1990

39. The foregoing paragraphs are incorporated herein.

40. Harassing and then terminating the Plaintiff because she sought accommodation for her disability constitutes retaliation in violation of 42 U.S.C. §12203(a)

41. As a result of Defendant's unlawful actions, Plaintiff was caused to lose wages and benefits, incur other expenses, and suffer severe emotional distress and mental anguish, including, but not limited to, depression, frustration, insomnia, appetite loss, loss of enjoyment in everyday life, inconvenience, shame, fear, and post-traumatic stress disorder.

Wherefore, the Plaintiff requests:

A. Judgment against Defendant, CACI, Inc. – Federal;

B. Payment of back wages;

C. Payment of front pay;

D. Compensatory Damages in the amount of $300,000.00;

E. Punitive Damages in the amount of $1,000,000.00;

F. Reasonable Attorney Fees and litigation expenses;

G. Reinstatement; and

H. Such other and further relief, as may be appropriate.

## COUNT FOUR
### Hostile Work Environment
### Americans with Disabilities Act of 1990

42. The foregoing paragraphs are incorporated herein.

43. Defendant's actions in over-scrutinizing Plaintiff's work and maliciously harassing her after she requested an accommodation for her disabilities, failing to provide a reasonable accommodation, and terminating the Plaintiff created a hostile work environment, a violation of the Americans with Disabilities Act of 1990 (ADA) as codified, 42 U.S.C. §§ 12112, *et seq.*

44. As a result of Defendant's unlawful actions, Plaintiff was caused to lose wages and benefits, incur other expenses, and suffer severe emotional distress and mental anguish, including, but not limited to, depression, frustration, insomnia, appetite loss, loss of enjoyment in everyday life, inconvenience, shame, fear, and post-traumatic stress disorder.

Wherefore, the Plaintiff requests:

A. Judgment against Defendant, CACI, Inc. -Federal;

B. Payment of back wages;

C. Payment of front pay;

D. Compensatory Damages in the amount of $300,000.00;

E. Punitive Damages in the amount of $1,000,000.00;

F. Reasonable Attorney Fees and litigation expenses;

G. Reinstatement; and

H. Such other and further relief, as may be appropriate.

_____/s/_____
John B. Stolarz
AIS No.: 7911010330
The Stolarz Law Firm
6509 York Road
Baltimore, MD 21212
(410) 532-7200
(410) 372-0529 (fax)
stolarz@verizon.net

Attorney for Plaintiff

8

## DEMAND FOR JURY TRIAL

Ivy Skidmore, Plaintiff, by John B. Stolarz, demands a jury trial on all issues.

_____/s/_____
John B. Stolarz

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this November 25, 2024 a copy of the foregoing document and Comparison of Amended Complaint to Original Complaint, were forwarded, for Defendant's consent by email, on:

Michelle M. McGeogh, Esquire
Ballard Spahr LLP
111 S Calvert Street
27th Floor
Baltimore, MD 21202,

Attorney for Defendant

Louis L. Chodoff, Esquire
Ballard Spahr LLP
700 East Gate Drive
Suite 330
Mount Laurel, NJ 08054

Attorney for Defendant

/s/ John B. Stolarz
John B. Stolarz

Attorney for Plaintiff

W:\5484\Pleadings- Amended Complaint\Complaint-Amended.wpd